[No. B039373. Second Dist., Div. Five. May 10, 1990.]

AMERICAN AIRLINES, INC., Plaintiff and Appellant, v. COUNTY OF SAN DIEGO, Defendant and Respondent.

[And 56 other cases.]*

---

*The 56 related cases in this coordination proceeding are listed in an appendix to this opinion.

**COUNSEL**

William R. Nicholas, Joseph A. Wheelock, Jr., William C. Choi and Latham & Watkins for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, Stephen R. Morris, Deputy County Counsel, Thomas F. Casey III, County Counsel, Mary Kay Raftery, Deputy County Counsel, Richard J. Moore, County Counsel, James F. May, Deputy County Counsel, Lloyd M. Harmon, Jr., County Counsel, Lewis Zollinger, Deputy County Counsel, Alan Marks, County Counsel, Dawn Stafford, Deputy County Counsel, Donald L. Clark, County Counsel, Thomas W. Cain, Deputy County Counsel, L.B. Elam, County Counsel, Robert A. Ryan, Deputy County Counsel, Gerald J. Geerlings, County Counsel, James J. Brzytwa, Deputy County Counsel, Adrian Kuyper, County Counsel, and David R. Chaffee, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**ASHBY, Acting P. J.**—This is an action for partial refund of personal property taxes on certain aircraft (hereinafter certificated aircraft). The plaintiffs and appellants who are seeking refunds are several airlines (hereinafter the airlines).[1] The defendants and respondents are various counties

---

[1] American Airlines, Inc., Continental Air Lines, Inc., Northwest Airlines, Inc. (formerly Republic Airlines, Inc.) and Pan American World Airways, Inc.

which have collected tax on the aircraft (hereinafter the counties).[2] Fifty-six related actions throughout the state were coordinated in Los Angeles Superior Court pursuant to Code of Civil Procedure section 404 et seq. and California Rules of Court, rule 1501 et seq., under the special title Aircraft Taxation Cases (Judicial Council Coordination Proceeding No. 2070). The airlines appeal from a summary judgment entered in favor of the counties.

■ The theory of the airlines' action for refund of personal property taxes is that the airlines do not own the certificated aircraft, but lease them from banks and financial corporations. According to this theory, the certificated aircraft are exempt from personal property tax because qualified banks and financial corporations pay a franchise tax which is in lieu of most other taxes, including personal property tax. (Cal. Const., art. XIII, § 27; Rev. & Tax. Code, § 23182; 61 Ops.Cal.Atty.Gen. 472 (1978).) Furthermore, the airlines contend that during the 1981 to 1986 tax years involved in this case, no statute imposed a property tax on leasehold possessory interests in tax-exempt personal property. (*General Dynamics Corp.* v. *County of L.A.* (1958) 51 Cal.2d 59, 66-67.)[3]

The underlying validity of this theory and several pertinent sub-issues were not determined by the trial court and we express no opinion thereon. The only issue on this appeal is the one on which summary judgment was granted. The counties contend, and the trial court agreed, that it makes no difference whether the certificated aircraft are owned by tax-exempt banks and financial corporations. The counties contend that Revenue and Taxation Code sections 1150 to 1156[4] impose property tax on the value of the aircraft "operated" by the airlines.

We reverse. Sections 1150 to 1156 do not impose a new tax or limit an existing exemption. These sections merely provide an allocation formula to determine the proportionate extent to which certificated aircraft are situated, for taxing purposes, in different taxing jurisdictions. Sections 1150 to 1156 do not address the underlying question raised by the airlines, whether these aircraft are exempt from personal property taxation in the first place by virtue of their alleged ownership by banks and financial corporations.

We remand the matter so that the genuine remaining issues may be determined. We express no opinion on the other merits of the airlines'

---

[2] The counties of Alameda, Los Angeles, Orange, Riverside, Sacramento, San Bernardino, San Diego, San Mateo and Santa Clara.

[3] The airlines concede that in 1986 the Legislature enacted such a tax in Revenue and Taxation Code section 235, which provides: "For the purposes of this division, the lessee of tangible personal property owned by a bank or financial corporation shall be conclusively presumed the owner of that property."

[4] All section references hereafter are to the Revenue and Taxation Code unless otherwise indicated.

theory for refunds. We merely hold that sections 1150 to 1156 are not relevant to the tax exemption asserted by the airlines.

## DISCUSSION

Both the language and the legislative history of sections 1150 to 1156 show these sections deal only with the special problem of determining the tax "situs" of the aircraft operated by air carriers engaged in air transportation.

### *Statutory Language*

Taxable property is normally assessed "where the property is situated." (§ 404.) Aircraft involve special considerations because they are movable. General aircraft (which expressly excludes the certificated aircraft involved in this case (§§ 1150, 5303)) are assessed by the county in which they are "habitually situated." (§§ 5362, 5366.)

"Certificated aircraft," however, are considered in sections 1150 to 1156.[5] This statutory scheme provides a different method *for determining the tax situs* of certificated aircraft. Section 1151 provides, "Certificated aircraft *shall be deemed to be situated in this state only to the extent* that such aircraft are normally physically present within the state, whether in flight or on the ground. *To determine such extent* for purposes of property taxation, the allocation formula specified by Section 1152 shall be applied." (Italics added.) Section 1155 provides in pertinent part that, *"For purposes of Section 404, certificated aircraft shall be deemed to be situated* only in those taxing agencies in which the aircraft normally make physical contact with sufficient regularity to entitle such agencies to tax the aircraft under the laws and Constitution of the United States." (Italics added.) Section 1156 provides, "Nothing in this article shall be construed to enlarge the right of any taxing agency to tax certificated aircraft in a manner not permitted by the laws or Constitution of the United States."[6]

The reason for these special rules for certificated aircraft is clear. Because they are operated by air carriers engaged in air transportation, certificated

---

[5] Certificated aircraft are defined by section 1150 which provides, "As used in this article, 'certificated aircraft' means aircraft operated by an air carrier or foreign air carrier engaged in air transportation as defined in subdivisions (3), (5), (10), and (19) of Section 101 of Title I of the 'Federal Aviation Act of 1958' (PL 85-726; 72 Stat 731) [49 USCS § 1301(3), (5), (10), and (19)], while there is in force a certificate or permit issued by the Civil Aeronautics Board of the United States, or its successor, or a certificate or permit issued by the California Public Utilities Commission, or its successor, authorizing such air carrier to engage in such transportation."

[6] Section 1152 provides the allocation formula to which section 1151 refers. The formula is based on a weighted average combining a "time in state factor" and an "arrivals and departures" factor. Section 1153 requires the State Board of Equalization to designate for each assessment year a "representative period" used in the allocation formula. Section 1154 designates rules for "air taxis."

aircraft regularly fly in and out of California and the various California counties having major airports. Under federal due process and commerce clause considerations, personal property taxes on such aircraft must be fairly apportioned. (*Braniff Airways* v. *Nebraska Board* (1954) 347 U.S. 590, 597-602 [98 L.Ed. 967, 975-978, 74 S.Ct. 757]; *Slick Airways* v. *County of Los Angeles* (1956) 140 Cal.App.2d 311, 313-315 [295 P.2d 46].) Sections 1150 to 1156 are designed to provide a uniform formula for apportioning such taxation among different taxing jurisdictions.

There is nothing in the language of sections 1150 to 1156 which imposes a tax on the "operation" of certificated aircraft.[7] The counties rely on the language that certificated aircraft are defined in section 1150 as "aircraft *operated by* an air carrier or foreign air carrier engaged in air transportation . . . ." (Italics added.) This reliance is misplaced because section 1150 is merely definitional. It does not by its terms impose a tax; it defines the aircraft to which sections 1151 to 1156 apply. The latter sections do not by their language impose a tax, they provide a formula to determine, for purposes of property taxation, the extent to which certificated aircraft are situated in different taxing agencies.

Property is subject to taxation unless it is exempt. (§ 201.) The central premise of the airlines in this litigation is that personal property owned by qualified banks and financial institutions is exempt from personal property taxation. (§ 23182.) The counties fail to show what language in sections 1150 to 1156 imposes a tax on property which is exempt.

These sections contain no reference to leases and do not impose a tax on leasehold possessory interests. When the Legislature has imposed a tax on leasehold possessory interests in exempt personal property, it has done so more directly. Thus, in 1973 the Legislature enacted section 201.5 which expressly provides in subdivision (a) that "[p]ossessory interests in property acquired by or for the California Pollution Control Financing Authority . . . whether in real or personal property, shall be subject to taxation under this code." In 1986, the Legislature enacted section 235 which provides, "For the purposes of this division, the lessee of tangible personal property owned by a bank or financial corporation shall be conclusively presumed the owner of that property."

*Legislative History*

Although the statutory language is unambiguous, we address the counties' argument that the legislative history shows the Legislature intended to

---

[7]Section 1151 clearly states that these sections are "for purposes of property taxation."

tax the airlines' certificated aircraft without regard to ownership. Contrary to the counties' contention, this history shows that the Legislature considered only the determination of an appropriate formula for allocation of property tax and did not at all consider the possibility that certificated aircraft could be exempt if owned by tax exempt entities.

Sections 1150 to 1156 have a detailed legislative history because they were enacted as the result of recommendations in a legislative committee report. (A Final Rep. of the Assem. Com. on Rev. & Tax., Vol. 4, No. 22, A Study of Aircraft Assessment in Cal. (Jan. 1968) (hereinafter referred to as Study), Appen. to 4 Assem. J. (1968 Reg. Sess.).)

The State Board of Equalization had requested the Legislature to determine a uniform method to apportion the value of commercial aircraft for property tax purposes. (Study, *supra,* at pp. 7-9.) The Study determined that although case law required some reasonable apportionment formula, there was discretion to choose among numerous possible formulas. (*Id.* at pp. 11-15.) The Study collected empirical data by surveying a variety of formulas used in other states. The Study considered the advantages and disadvantages of these alternatives and recommended a particular formula which combined the factors of time-in-state and arrivals-and-departures in order to encourage airlines to base their operations and service facilities in California. (*Id.* at pp. 16-26.)

In short, the discussion in the legislative committee report leading to enactment of sections 1150 to 1156 was directed *entirely* to selection from alternative *formulas* for *allocating* tax on property which was assumed to be taxable. The Study contained no discussion whatsoever about leasing versus ownership of certificated aircraft or the possibility that the aircraft could be owned by a tax-exempt entity. It contained no discussion of imposing a new tax on the "operation" of aircraft or imposing a theretofore unprecedented tax on leasehold possessory interests in tax-exempt personal property.

The counties' argument that the Study had anything to do with the tax exemption problem in this case is based on taking isolated words and phrases out of context. Although the Study mentioned various "goals," including treating air carriers equitably and uniformly, fully measuring the activity of aircraft in California, and reflecting benefits conferred by localities upon air carriers, these were discussed as goals *of the allocation formulas* being considered.

The counties contend that such goals will be frustrated if a portion of these aircraft escape taxation because owned by exempt banks and financial

corporations. They ask, why bother to devise an allocation formula if the property is exempt? This does not show, however, that sections 1150 to 1156 were addressed to the tax exemption issue. If the airlines have indeed discovered a tax "loophole," that loophole cannot be simply wished away by misconstruing and misapplying an irrelevant statute.

### Application of Formula and Administrative Interpretation

Finally, the counties contend that the *manner* in which the formula is applied, as directed by regulations and a handbook of the State Board of Equalization interpreting section 1152, necessarily shows that ownership by a tax-exempt entity is irrelevant. There is no merit to this contention.

In order for this argument to be understood it is necessary to give some details as to how the formula in section 1152 is applied.[8] The State Board of Equalization's directions to assessors on how to apply the formula are contained in a regulation (Cal. Code Regs., tit. 18, § 202, subds. (c)-(g)) and in Publication AH570, entitled Assessor's Handbook, Commercial Aircraft Value Allocation. These provisions are more briefly summarized by the Bolthouse declaration which was submitted in support of the counties' motion for summary judgment.[9]

---

[8] Section 1152 provides: "The allocation formula to be used by each assessor is as follows: [¶] (a) The time in state factor is the proportionate amount of time, both in the air and on the ground, that certificated aircraft have spent within the state during a representative period as compared to the total time in the representative period. For purposes of this subdivision, all time, both in the air and on the ground, that certificated aircraft have spent within the state prior to the aircraft's first entry into the revenue service of the air carrier in control of the aircraft on the current lien date shall be excluded from the time in state factor. This factor shall be multiplied by 75 percent. [¶] (b) The arrivals and departures factor is the proportionate number of arrivals in and departures from airports within the state of certificated aircraft during a representative period as compared to the total number of arrivals in and departures from airports during the representative period. This factor shall be multiplied by 25 percent. [¶] (c) For the 1983-84 fiscal year and fiscal years thereafter, in computing the time-in-state factor, on each occasion during the representative period that a certificated aircraft has spent 720 or more consecutive hours on the ground, all ground time in excess of 168 hours shall be excluded from the time in state attributable to that aircraft. [¶] (d) The time in state factor shall be added to the arrivals and departures factor. [¶] (e) The figure produced by application of subdivision (d) equals the allocation to be applied to full cash value to determine the value to which the assessment ratio shall be applied."

[9] Mr. Bolthouse, a supervising appraiser in the Los Angeles County Assessor's office, declared, "The Handbook procedures which I regularly follow in my assessment work do not exempt personal property taxation aircraft which are leased by an air carrier if such aircraft are operated as a part of the carrier's commercial fleet. In assessing tax on aircraft, no distinction is made between aircraft owned by the airlines and aircraft that may technically be leased from another party when such aircraft is operated by the air carrier as part of its regular air fleet. Rather, all aircraft operated under the certificate of an air carrier are treated the same. [¶] Property taxes on aircraft operated under the certificate of an air carrier are

The counties' argument has two elements: (1) in order to complete the assessors' forms the airlines are required to give the price of the aircraft if purchased or the cost to the lessor if leased, and (2) the final step in the calculation is to multiply the figure obtained from the allocation formula to the full cash value of an airline's worldwide fleet. Neither of these factors shows, however, that the Legislature intended in section 1152 to tax personal property which is exempt in the first instance.

The airlines concede that if leased property is *not exempt,* it may be assessed jointly to the lessor and the lessee. (§ 405.) This does not necessarily show that the Legislature intended to separately tax a leasehold possessory interest in *exempt* property or to limit an existing exemption.

Similarly, the constitutionality of the practice of multiplying the allocable percentage by the value of the entire worldwide fleet (*Slick Airways* v. *County of Los Angeles, supra*, 140 Cal.App.2d at pp. 312-313), does not address whether the Legislature has chosen by statute (e.g., § 23182) to exempt the property from taxation in the first place.

One may readily agree with the counties that if the Legislature had considered or foreseen that certificated aircraft might escape personal property taxation if owned by banks rather than the airlines, the Legislature probably would have acted to prevent such tax avoidance (e.g., § 235). But the only question we may decide is whether sections 1150 to 1156 achieve this result. We conclude that nothing in the language or legislative history of these sections is addressed to the tax consequences of the alleged ownership of certificated aircraft by banks and financial corporations. The trial court improperly granted summary judgment on the basis of sections 1150 to 1156.

---

assessed as follows. A separate calculation is made for each aircraft type operated by a particular carrier (*e.g.,* Boeing 747, DC-10). The assessor first determines the total time (in minutes) which aircraft of that type operated by the carrier actually spend within a taxing authority during the representative time period. Then the assessor determines the total possible number of minutes during the same time period for *all* aircraft of that type operated by the carrier as part of its fleet anywhere in the world. This percentage (in-state time divided by total possible time) is multiplied by .75, since the time in state factor is 75%, and is then applied to the total value of an air carrier's world-wide fleet of the aircraft . . . . [¶] Similarly, to calculate the arrivals and departures factor, the assessor begins by ascertaining the total number of takeoffs and landings within a taxing authority during the representative period. He then determines the total number of takeoffs and landings in the same time period by all planes of the type operated by the airline as part of its fleet anywhere in the world. The in-state number is multiplied by the total number. This percentage is multiplied by .25 (to reflect the statutory weighting factor). [¶] The time in state and arrivals/departures allocation ratios of total fleet value are added together, and applied to the total value of an air carrier's worldwide fleet of the aircraft type. The result is that portion of a carrier's worldwide fleet of aircraft which is taxable to a particular taxing authority."

The judgment is reversed. Costs on appeal are awarded to appellants.

Boren, J., and Turner, J., concurred.

APPENDIX

The cases included in the coordination proceeding from which this appeal is taken are:

INCLUDED ACTIONS

| | |
|---|---|
| American Airlines, Inc. v. County of San Diego | San Diego Superior Court Case No. 566087 |
| Continental Air Lines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C626327 |
| Continental Air Lines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C626328 |
| Continental Air Lines, Inc. v. County of Santa Clara | Santa Clara Superior Court Case No. 616961 |
| Continental Air Lines, Inc. v. County of San Diego | San Diego Superior Court Case No. 566090 |
| Continental Air Lines, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 308297 |
| Pan American World Airways, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. 606164 |
| Pan American World Airways, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 313473 |
| Republic Airlines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C626332 |
| Republic Airlines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C626330 |
| Republic Airlines, Inc. v. County of Orange | Orange County Superior Court Case No. 507783 |
| Republic Airlines, Inc. v. County of Riverside | Riverside Superior Court Case No. 48768 |
| Republic Airlines, Inc. v. County of Sacramento | Sacramento Superior Court Case No. 340495 |
| Republic Airlines, Inc. v. County of San Bernardino | San Bernardino Superior Court Case No. 38608 |
| Republic Airlines, Inc. v. County of Santa Clara | Santa Clara Superior Court Case No. 616964 |

| | |
|---|---|
| Republic Airlines, Inc. v. County of San Diego | San Diego Superior Court Case No. 566085 |
| Republic Airlines, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 308295 |
| American Airlines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C655611 |
| American Airlines, Inc. v. County of Riverside | Riverside Superior Court Case No. 51163 |
| American Airlines, Inc. v. County of Sacramento | Sacramento Superior Court Case No. 352971 |
| American Airlines, Inc. v. County of San Bernardino | San Bernardino Superior Court Case No. 237980 |
| American Airlines, Inc. v. County of Santa Clara | Santa Clara Superior Court Case No. 636122 |
| American Airlines, Inc. v. County of San Diego | San Diego Superior Court Case No. 589207 |
| American Airlines, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 321554 |
| Continental Air Lines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C655610 |
| Continental Air Lines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C655609 |
| Continental Air Lines, Inc. v. County of San Bernardino | San Bernardino Superior Court Case No. 237981 |
| Continental Air Lines, Inc. v. County of Santa Clara | Santa Clara Superior Court Case No. 636082 |
| Continental Air Lines, Inc. v. County of San Diego | San Diego Superior Court Case No. 589209 |
| Continental Air Lines, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 321553 |
| Pan American World Airways, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C649454 |
| Pan American World Airways, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 321552 |
| American Airlines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C685245 |

| | |
|---|---|
| American Airlines, Inc. v. County of Riverside | Riverside Superior Court (Indio) Case No. 53667 |
| American Airlines, Inc. v. County of Sacramento | Sacramento Superior Court Case No. 352970 |
| American Airlines, Inc. v. County of San Bernardino | San Bernardino Superior Court Case No. 243329 |
| American Airlines, Inc. v. County of Santa Clara | Santa Clara Superior Court Case No. 655966 |
| American Airlines, Inc. v. County of San Diego | San Diego Superior Court Case No. 589208 |
| American Airlines, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 321555 |
| American Airlines, Inc. v. County of Alameda | Alameda Superior Court Case No. 638615 |
| Continental Air Lines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C685241 |
| Continental Air Lines, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C685243 |
| Continental Air Lines, Inc. v. County of San Bernardino | San Bernardino Superior Court Case No. 243330 |
| Continental Air Lines, Inc. v. County of Santa Clara | Santa Clara Superior Court Case No. 655965 |
| Continental Air Lines, Inc. v. County of San Diego | San Diego Superior Court Case No. 596301 |
| Continental Air Lines, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 329793 |
| Pan American World Airways, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C685244 |
| Pan American World Airways, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 329795 |
| Continental Air Lines, Inc. v. County of San Diego | San Diego Superior Court Case No. 598831 |
| Pan American World Airways, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C685246 |
| Pan American World Airways, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 329796 |

| | |
|---|---|
| Continental Air Lines, Inc. v. County of San Diego | San Diego Superior Court Case No. 598819 |
| Pan American World Airways, Inc. v. County of Los Angeles | Los Angeles Superior Court Case No. C685242 |
| Pan American World Airways, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 329794 |
| Continental Air Lines, Inc. v. County of San Diego | San Diego Superior Court Case No. 598832 |
| Pan American World Airways, Inc. v. County of San Mateo | San Mateo Superior Court Case No. 329797 |