[No. B201617. Second Dist., Div. Five. Oct. 30, 2008.]

RICK AUERBACH, as Assessor, etc., Plaintiff and Appellant, v.
LOS ANGELES COUNTY ASSESSMENT APPEALS BOARD NO. 2,
Defendant and Respondent;
CKE ASSOCIATES, Real Party in Interest and Respondent.

---

**COUNSEL**

Raymond G. Fortner, Jr., County Counsel, and Albert Ramseyer, Principal Deputy County Counsel, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Dreier Stein Kahan Browne Woods George, Eric M. George, Marta B. Almli and Ira Bibbero for Real Party in Interest and Respondent.

---

**OPINION**

**MOSK, J.—**

### INTRODUCTION

Plaintiff and appellant Rick Auerbach, in his capacity as the Los Angeles County Assessor (Assessor), levied, i.e., enrolled,[1] a property tax assessment

---

[1] *Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1330 [101 Cal.Rptr.2d 591].

on a business jet aircraft owned by real party in interest CKE Associates (CKE) that included a hypothetical sales tax as an element of value. CKE appealed the assessment to the respondent Los Angeles County Assessment Appeals Board No. 2 (Appeals Board). The Appeals Board found that CKE's aircraft was exempt from sales tax based on its use by a common carrier, that the Assessor therefore improperly included the sales tax figure as an element of value, and that the assessment should be reduced accordingly. The Assessor filed a petition for a writ of administrative mandamus in the trial court seeking to overturn the decision of the Appeals Board. The trial court denied the petition.

On appeal from the judgment of the trial court, the Assessor argues that the use of CKE's aircraft as an on-demand, unscheduled air taxi did not qualify it for the common carrier exemption from sales tax. In the alternative, the Assessor contends that there is no evidence in the administrative record that CKE's aircraft was operated in a manner that qualified it for the common carrier exemption as of the January 2004 valuation date.

We hold that (i) the use of CKE's aircraft as an unscheduled air taxi qualified it under the definition of a common carrier, even though the aircraft was not a commercial aircraft used for scheduled airline operations; (ii) based on its use by a common carrier, CKE's aircraft was exempt from sales tax; (iii) the Assessor did not carry his burden of proof to show that CKE's aircraft was not operated by a common carrier as of the January 2004 valuation date; and (iv) an amount attributed to sales tax should not have been included in the Assessor's valuation of CKE's aircraft. We therefore affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 1999, CKE purchased a 1989 Gulfstream Aerospace G-IV business jet aircraft, serial No. 1099 (aircraft) from Gulfstream Aerospace Corporation in Savannah, Georgia for $19.2 million. CKE entered into an agreement with Elite Aviation, LLC (Elite), which had an "Air Carrier Certificate" authorizing it "to operate as an air carrier and conduct common carriage operations in accordance with said Act [Federal Aviation Act of 1958]." Pursuant to the agreement, Elite would charter the aircraft to third parties on behalf of CKE, which did not have an air carrier certificate. CKE also authorized another company comparable to Elite, AVJet Corporation (AVJet), to operate the aircraft under the same federal regulations applicable to Elite. It is not uncommon for private individuals or companies owning corporate jets, as here, to enter into agreements with charter companies to charter the jets for use by third parties when the owners are not using the jets.

In April 2000, the State Board of Equalization (SBE) sent CKE a letter stating, "The State Board of Equalization administers the Sales and Use Tax Law.[2] The purchase of an aircraft for use, storage, or other consumption in this state is subject to sales or use tax. A purchase from a licensed dealer is subject to sales tax payable by the dealer directly to the Board of Equalization. All other purchases are subject to use tax payable by the purchaser. There is no indication in our records that your purchase was a dealer sale. Therefore, your purchase appears subject to use tax. [¶] If you made your purchase through a broker and did not pay use tax, or your purchase was from a private party, you must complete the enclosed return form and mail it with the payment of the use tax due. The enclosed instructions contain information regarding possible exemptions from the use tax." (Boldface omitted.)

CKE responded by filing a "use tax return for aircraft" seeking an exemption from use tax as a common carrier. In January 2001, the SBE sent CKE a letter requesting documentation that would "establish that the principal use of the aircraft was as a common carrier during the first twelve months of operational use."[3] CKE replied in February 2001 with a letter that enclosed "the information that [the SBE] requested in [its] letter dated January 24, 2001." According to CKE, "[o]ut of the 521.6 operational hours [that the aircraft flew in the first 12 months of use], 329.0 hours were Charter hours." In May 2001, the SBE sent CKE a letter advising that the "information received [from CKE] has enabled [the SBE] to close [CKE's] Consumer Use Tax file . . . ."

---

[2] "The California Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.) embodies a comprehensive tax system created to impose an excise tax, for the support of state and local government, on the sale, use, storage or consumption of tangible personal property within the state. (See *Douglas Aircraft Co.* v. *Johnson* (1939) 13 Cal.2d 545 [90 P.2d 572].) The two taxes, sales and use, are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question. In essence ' "[a] sales tax is a tax on the freedom of purchase . . . . [a] use tax is a tax on the enjoyment of that which was purchased." ' (*Union Oil Co.* v. *State Bd. of Equalization* (1963) 60 Cal.2d 441, 452 [34 Cal.Rptr. 872, 386 P.2d 496], quoting *McLeod* v. *J. E. Dilworth Co.* (1944) 322 U.S. 327, 330 [88 L.Ed. 1304, 1306–1307, 64 S.Ct. 1023].)" (*Wallace Berrie & Co.* v. *State Bd. of Equalization* (1985) 40 Cal.3d 60, 66–67 [219 Cal.Rptr. 142, 707 P.2d 204], fns. omitted.)

[3] There is no dispute that the aircraft met the statutory or regulatory criteria for the common carrier exemption. Revenue and Taxation Code section 6366, subdivision (b) provides that with respect to aircraft sold on or after January 1, 1997, there is a rebuttable presumption that a person is not engaged in business as a common carrier if the yearly gross receipts from the use of the aircraft by a common carrier do not exceed 20 percent of the purchase cost of the aircraft or $50,000, whichever is less. California Code of Regulations, title 18, section 1593, subdivision (c)(1)(B) provides, in part, "If the aircraft is used as a common carrier for more than one-half of the operational use during the test period, the carrier's principal use of the aircraft will be deemed to be that of a common carrier . . . ."

In October 2004, the Assessor sent CKE a "Notice of Enrollment of Escape Assessment"[4] for the year 2004—a year in which an assessment presumably had already been made. The amount of the assessment was $1,025,000. On November 16, 2004, the Assessor enrolled the escape assessment and notified CKE of its right to appeal. According to CKE, the assessment was based on "so called underreported costs" that consisted of a "theoretical sales tax on the value of the aircraft."

In January 2005, CKE filed an "Application for Changed Assessment 2004/2005" in which CKE contended that because "the aircraft purchase was exempt from California sales or use tax and no California sales or use tax have [sic] ever been payable on this aircraft . . . there is no justification in fact or law to impose a property tax based on a theoretical sales or use tax which has never been assessed or paid."

CKE also requested an opinion from the SBE regarding the propriety of the escape assessment on its aircraft. The SBE provided the following opinion: "[W]e conclude that [CKE's] aircraft [was] exempt from sales and use tax when [it was] purchased and when [it was] valued [by the Assessor] so long as [CKE] is a common carrier as defined and implemented by the California Code of Regulations, Title 18, section 1593."

The Appeals Board held a hearing on CKE's application for a change in the escape assessment. CKE appeared through its tax agent, David Lucero, who introduced several of the documents discussed above into the record, including the correspondence with the SBE showing that CKE had established an exemption from use tax as a common carrier in 2001 and the opinion letter from the SBE stating that CKE's aircraft should be valued without including sales tax. In addition, Mr. Lucero presented excerpts from sections of the Assessors' Handbook issued by the SBE for use by the local boards of equalization and assessors.[5] Those excerpts stated that because aircraft operated by common carriers are exempt from sales or use tax, they

---

[4] "In California, assessors have a statutory duty to 'assess all property subject to general property taxation at its full value.' (Rev. & Tax. Code, § 401; see Rev. & Tax. Code, § 1361 et seq.) If an assessor discovers property has 'escaped assessment,' i.e., has been underassessed or unassessed, he or she has a constitutional duty to levy retroactive assessments. (Rev. & Tax., Code §§ 531–531.7; 1 Ehrman & Flavin, Taxing Cal. Property [(3d ed. 1988)] §§ 14:01, p.1, 14.02, 14.03, pp. 6–9.)" (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1127 [51 Cal.Rptr.2d 251, 912 P.2d 1198].)

[5] "The Assessors' Handbook is a series of manuals developed by the staff of the Board of Equalization in an open process. The objective of the Assessors' Handbook is to give county assessors, their staff, and other interested parties an understanding of the principles of property assessment and real and personal property appraisal for property tax purposes. The Assessors' Handbook is intended to serve as a guide for the appraisal and assessment of real and personal property. Additionally, the Assessors' Handbook presents the Board staff's interpretation of

should be valued without any sales tax component.[6] Mr. Lucero also introduced the "Air Carrier Certificates" that authorized Elite and AVJet to operate CKE's aircraft as an air carrier. On cross-examination, Mr. Lucero admitted that CKE was not in the "aircraft business" and that he was unaware of "the line of business" in which CKE was engaged.

Carol Ruwart, senior tax counsel with the SBE's legal department, opined that all aircraft operated by air carriers are equally situated and should be treated for purposes of property tax assessment as being at the same "trade level."[7] According to Ms. Ruwart, "the common carrier exemption creates essentially a trade level of its own, a subgroup." Ms. Ruwart concluded that so long as an "aircraft is operated in a manner . . . that qualifies as a common carrier . . . sales tax should not be an element of value."

The Assessor's supervising appraiser for the "Marine & Aircraft" section, Ira Litchman, explained that the Assessor considers only two trade levels for aircraft—commercial carriers such as "Delta, United, [and] Southwest" and general aviation aircraft. The aircraft of commercial carriers are valued using a "methodology based on the amount of time in the county, landings and take

---

rules, laws, and court decisions on property assessment." (SBE Assessors' Handbook <http://www.boe.ca.gov/proptaxes/ahcont.htm> [as of Oct. 30, 2008].)

[6] The Assessor's request for judicial notice of excerpts from a document entitled "Madera County Assessment Practices Survey Manual 2008," that purportedly contains the SBE's recommendation that a sales tax should be included when estimating the full cash value of aircraft, is denied as not being appropriate for judicial notice (see Evid. Code, §§ 451, 452) or particularly helpful because, inter alia, it was not before the Appeals Board or trial court. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [76 Cal.Rptr.2d 749, 958 P.2d 1062].)

[7] "In the appraisal of tangible personal property for purposes of taxation, the property may be found on the [valuation] date at various phases or levels of production or distribution. At whatever level it is found, from primary producer or manufacturer to the ultimate consumer, it is necessary that the property be assessed on the [valuation] date to the person owning, possessing or controlling it on that date. (Rev. & Tax. Code, § 405.) It would be manifestly unfair to the taxpayer to value personal property such as livestock or petroleum in the hands of the primary producer at the price it will ultimately bring after having been processed and moved to the market place. It is equally apparent that it would be unfair to the taxing agency and to other taxpayers for the ultimate consumer, or even the retailer, to be taxed at the value of the unprocessed mineral or livestock. Under neither circumstance would the assessment represent the market value of the product at that level of its production or trade. Thus, the costs incurred in producing and marketing property are elements which in common experience ordinarily determine value. (*Michael Todd Co.* v. *County of Los Angeles* (1962) 57 Cal.2d 684, 697 [21 Cal.Rptr. 604, 371 P.2d 340].) [¶] In an attempt to establish uniformity in the assessment of such property, the State Board of Equalization has established regulations requiring the assessor to give recognition to the 'trade level' at which the property is situated on the [valuation] date and 'to the principle that property normally increases in value as it progresses through production and distribution channels.' (Cal. Admin. Code, tit. 18, § 10.)" (*Xerox Corp.* v. *County of Orange* (1977) 66 Cal.App.3d 746, 753–754 [136 Cal.Rptr. 583] (*Xerox*).)

offs . . . [and] ground time . . . ."[8] General aviation aircraft are assessed at 100 percent of market value using "the aircraft blue book price digest" and "various adjustments that are required." Normal adjustments for general aviation aircraft, including CKE's aircraft, include "adjustments for engine and airframe hours . . . maintenance service plans . . . a 10% reduction off the market value in blue book guides to account for . . . an average condition for the aircraft and . . . [an increase for] sales tax . . . ." According to Mr. Litchman, a "common carrier" is generally understood to be a commercial airline, not a charter company, and therefore the common carrier exemption from sales or use tax applied only to commercial airlines.

Mr. Litchman indicated that he and his staff researched CKE and determined that it was formed by Michael Ovitz and that it was composed of four separate companies that represented artists and persons in the entertainment industry. Mr. Litchman believed the aircraft was a business jet owned by CKE and that CKE was not a commercial air carrier or a "charter business."

Mr. Litchman determined from the Federal Aviation Administration's Web site that CKE leased the aircraft to Elite "to charter [the] aircraft out." He opined that a majority of the corporate jets in the county are privately owned, but leased to charter companies to use when the owners are not using them to help defray the costs associated with maintenance and operation of the aircraft.

Mr. Litchman asserted that there was no evidence that CKE's aircraft was being operated by a common carrier as of the "lien date"[9] in issue, January 1, 2004. Instead, it appeared to him that the aircraft was "exempted" from sales or use tax at the time of its purchase in 1999 because it was purchased out of state, not because CKE was a common carrier. He also understood that

---

[8] "In California, property taxes on certificated [commercial] aircraft having a tax situs in multiple jurisdictions are allocated according to a prescribed formula. (Rev. & Tax. Code, §§ 1150–1156; *American Airlines, Inc.* v. *County of San Diego* (1990) 220 Cal.App.3d 164, 167–168 [269 Cal.Rptr. 372]; *County of Alameda* v. *State Bd. of Equalization* (1982) 131 Cal.App.3d 374, 379 [182 Cal.Rptr. 450].) This formula enables county assessors to determine 'the amount of aircraft presence within the state during the taxable year, i.e., the "time in state" factor.' (*County of Alameda* v. *State Bd. of Equalization, supra,* 131 Cal.App.3d at pp. 379–380.) Once this apportionment is determined, it is taxed in the same manner as all locally assessed personal property in California; that is, it is annually assessed at 100 percent of fair market value, and taxed at the rate of 1 percent. (Cal. Const., art. XIII, §§ 2, 12; Rev. & Tax. Code, §§ 106, 110.5, 135, subd. (a), 401; 1 Ehrman & Flavin, Taxing Cal. Property[, *supra,*] § 9:06, p. 6.)" (*American Airlines, Inc.* v. *County of San Mateo, supra,* 12 Cal.4th at pp. 1124–1125.)

[9] The Assessor each year assesses all taxable property in the county on the lien date to the person who owns that property on that date. (Rev. & Tax. Code, §§ 401.3, 405, subd. (a).) The lien date is the date on which the taxes for a fiscal year attach to and become a lien against the property. (Rev. & Tax. Code, § 117.)

CKE's aircraft was not a "certificated aircraft," as that term is used in Revenue and Taxation Code section 1150, because, based on his understanding, that section refers to commercial airlines.

The Appeals Board issued its findings of fact and noted that CKE "agreed to all of the elements of the Assessor's calculation [of the value of CKE's aircraft] *except* the sales tax trade level adjustment." The Appeals Board made the following findings: "The Board finds that the Assessor's primary basis for finding that this aircraft should have a sales tax component added is not justified. [¶] The Assessor agrees that the subject aircraft is a certified common carrier, but that it is an unscheduled air taxi[.] [T]he Assessor has relied on Revenue and Taxation Code Section 1154 C. The Board finds that the Assessor's reliance on this section is ill founded. The Board believes that this code section is intended to only differentiate between scheduled commercial carriers and air taxis for the methodology to be use [*sic*] for allocation purposes. [¶] The Board agrees with letters and testimony of the [SBE] that as long as this aircraft is continued to be used as a common carrier it is exempt from the addition of sales tax as component of value. [¶] The Board finds that the Assessor is correct that he may question that the use of the aircraft still meets the standards set by the [SBE] to be a common carrier as defined by Regulation 1593 on the annual lien date. [¶] In this matter, the Assessor is wrong that the Applicant has the burden of proof. The 2004 addition of sales tax was by a roll change and the Assessor has the burden. The Assessor presented no evidence that the aircraft was not still being used as a common carrier. [¶] Therefore, the Board finds for a total value of $11,562,200."

The Assessor filed a petition for writ of administrative mandamus in the trial court challenging the Appeals Board's decision on the valuation issue. The trial court agreed with the Appeals Board that the Assessor had the burden of proof in the administrative proceeding, and denied the petition. The trial court reasoned that the "regulation defines a common carrier as, 'Any person who engages in the business of transporting persons or property for hire or compensation and who offers his or her services indiscriminately to the public or to some portion of the public.' 18 CCR section 1593(a)(2). The decision of the Appeals Board is supported by substantial evidence in the administrative record and is not contrary to law. The Assessor has failed to carry his burden of proof that the aircraft is not being used as a common carrier or that the price of the aircraft, if purchased by [CKE] on the valuation date, would not be exempt from sales tax."

The trial court entered judgment in favor of CKE. The Assessor timely filed a notice of appeal from the judgment.

## DISCUSSION

### A. *Standard of Review*

"The nature of an issue on appeal determines the appellate court's standard of review in an administrative mandamus case. Questions of law . . . are given a de novo review . . . . (*JKH Enterprises*[*, Inc. v. Department of Industrial Relations* (2006)] 142 Cal.App.4th [1046,] 1058, fn. 11 [48 Cal.Rptr.3d 563].) [¶] In examining the findings in a [Code of Civil Procedure] section 1094.5 case, reviewing courts apply the substantial evidence test. That test is applied to *the trial court's findings* if a fundamental vested right is involved or substantially affected and the trial court exercised its independent judgment in examining the administrative decision. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) On the other hand, if no fundamental vested right presents in the case and the trial court applied the substantial evidence test, then the reviewing court's task is the same as the trial court's—examination, under the substantial evidence test, *of the administrative agency's findings.* (*JKH Enterprises, supra*, 142 Cal.App.4th at p. 1058.) When an appellate court examines the administrative findings and determines they are supported by substantial evidence, the court then determines whether those findings support the administrative order or decision. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514–515 [113 Cal.Rptr. 836, 522 P.2d 12].)" (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 851 [75 Cal.Rptr.3d 887].)

" ' "[I]n an administrative mandamus action where no limited trial de novo is authorized by law, the trial and appellate courts occupy in essence identical positions with regard to the administrative record, exercising the appellate function of determining whether the record is free from legal error. [Citations.]" (*Honey Springs Homeowners Assn. v. Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1135, fn. 10 [203 Cal.Rptr. 886].) Thus, the conclusions of the superior court, and its disposition of the issues in this case, are not conclusive on appeal. (*Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 387 [146 Cal.Rptr. 892][.])' (*Orinda Assn. v. Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1160 [227 Cal.Rptr. 688].)" (*Stolman v. City of Los Angeles* (2003) 114 Cal.App.4th 916, 922 [8 Cal.Rptr.3d 178].)

### B. *Burden of Proof*

The parties disagree as to which of them had the burden of proof before the Appeals Board. The Assessor contends that under California Code of

Regulations, title 18, section 321,[10] he merely had the burden of production, which he satisfied by providing the Appeals Board with "the factual detail of the challenged assessments, together with an analysis of the law and applicable public policy." CKE contends that Revenue and Taxation Code section 167 placed the burden of proof on the Assessor because the challenged assessment was an escape assessment. (See fn. 4, *ante*.) According to CKE, it was entitled under Revenue and Taxation Code section 167 to a presumption that its aircraft was operated by a common carrier on the lien date and that the Assessor had the burden of proving otherwise.

██ Revenue and Taxation Code section 167, subdivision (a) provides: "Notwithstanding any other provision of law to the contrary, and except as provided in subdivision (b), there shall be a rebuttable presumption affecting the burden of proof in favor of the taxpayer or assessee who has supplied all information as required by law to the assessor in any administrative hearing involving the imposition of a tax on an owner-occupied single-family dwelling, the assessment of an owner-occupied single-family dwelling pursuant to this division, or the appeal of an escape assessment." By its express terms, section 167, in effect, shifts the burden of proof to the Assessor in an appeal of an escape assessment. In doing so, the statute creates a rebuttable presumption in favor of CKE that CKE's valuation of its aircraft was correct. (See *Mitchell v. County of Los Angeles* (1997) 60 Cal.App.4th 497, 500 [70 Cal.Rptr.2d 476] ["Under Revenue and Taxation Code section 167, in an administrative hearing involving an owner-occupied single-family dwelling, there is a rebuttable presumption that the owner's valuation is correct. In such an instance, the burden is on the County to overcome the presumption."].)

The Assessor's reliance on California Code of Regulations, title 18, section 321 in support of his burden of proof argument is misplaced. Revenue and

---

[10] California Code of Regulations, title 18, section 321 provides in pertinent part: "(a) Subject to exceptions set by law, it is presumed that the assessor has properly performed his or her duties. The effect of this presumption is to impose upon the applicant the burden of proving that the value on the assessment roll is not correct, or, where applicable, the property in question has not been otherwise correctly assessed. The law requires that the applicant present independent evidence relevant to the full value of the property or other issue presented by the application. [¶] (b) If the applicant has presented evidence, and the assessor has also presented evidence, then the board must weigh all of the evidence to determine whether it has been established by a preponderance of the evidence that the assessor's determination is incorrect. The presumption that the assessor has properly performed his or her duties is not evidence and shall not be considered by the board in its deliberations. [¶] (c) The assessor has the burden of establishing the basis for imposition of a penalty assessment. [¶] (d) Exceptions to subsection (a) apply in any hearing involving the assessment of an owner-occupied single-family dwelling or an escape assessment. In such instances, the presumption in section 167 of the Revenue and Taxation Code affecting the burden of proof in favor of the applicant who has supplied all information to the assessor as required by law imposes upon the assessor the duty of rebutting the presumption by the submission of evidence supporting the assessment."

Taxation Code section 167 creates for an appeal of an escape assessment an "exception[] set by law" to the general rule that "it is presumed that the [A]ssessor has properly performed his or her duties." (Cal. Code Regs., tit. 18, § 321, subd. (a).) California Code of Regulations, title 18, section 321 does state that the presumption in favor of the taxpayer may be rebutted by "the submission of evidence supporting the assessment." But, in appeals in which the Assessor disputes the factual basis of the taxpayer's valuation, the Assessor's submission must, under a reasonable reading of the regulation, include evidence rebutting that factual basis.

In this case, the Assessor challenged CKE's valuation on both legal and factual grounds. The legal challenge asserted either that charter carriers like Elite were not common carriers for purposes of the sales tax exemption or that even if CKE's aircraft was operated by a common carrier, such a status was legally irrelevant to the property tax calculation. According to the Assessor, the relevant determination was whether CKE's aircraft was operated as a scheduled "air taxi," in which case the sales tax exemption would apply, or as an unscheduled "air taxi," in which case the exemption would not apply.[11]

The Assessor's factual challenge, however, asserted that, even if unscheduled air taxis could qualify for the common carrier sales tax exemption, CKE's aircraft was not being operated by a common carrier on the lien date. As to that factual challenge, the Assessor had the burden of proof under Revenue and Taxation Code section 167 to show how CKE's aircraft was being operated on the lien date.

### C. *Common Carrier Exemption*

■ California Revenue and Taxation Code section 6366.1, subdivision (a)[12] expressly exempts from sales tax aircraft that are leased to lessees

---

[11] The Assessor's position in this regard is based on subdivisions (b) and (c) of Revenue and Taxation Code section 1154, which provide: "(b) Air taxis which are operated in scheduled air taxi operations are not subject to the provisions of Part 10 (commencing with Section 5301) of this division and shall be assessed in accordance with the allocation formula [for commercial aircraft] set forth in Section 1152. [¶] (c) All other air taxis shall be assessed in the county where the aircraft is habitually situated in the same manner and at the same ratio as other personal property in the county subject to general property taxation. Such aircraft shall be taxed at the same rate and in the same manner as all other property on the unsecured roll."

[12] Revenue and Taxation Code section 6366.1, subdivision (a) provides: "There are exempted from the taxes imposed by this part, the gross receipts from the sale of and the storage, use, or other consumption in this state of aircraft which are leased, or are sold to persons for the purpose of leasing, to lessees using such aircraft as common carriers of persons or property under authority of the laws of this state, of the United States or any foreign government, or to any foreign government as lessees for use by such government outside the state, or to persons

that use the aircraft "as common carriers of persons or property . . . ." (See also Cal. Code Regs., tit. 18, § 1593, subd. (b)(1)(A) ["(b) Application of Tax. [¶] (1) Aircraft. Tax does not apply to the sale of and the storage, use, or other consumption of aircraft sold, leased, or sold to persons for the purpose of leasing, to: [¶] (A) a person who operates the aircraft as a common carrier of persons or property, provided: [¶] 1. the person operates the aircraft under authority of the laws of this state, of the United States, or of any foreign government, and [¶] 2. the person's use of the aircraft as a common carrier is authorized or permitted by the person's governmental authority to operate the aircraft . . . ."].) The term "common carrier" means "any person who engages in the business of transporting persons or property for hire or compensation and who offers his or her services indiscriminately to the public or to some portion of the public." (Cal. Code Regs., tit. 18, §.1593, subd. (a)(2).)

In 2001, CKE submitted evidence to the SBE that during the first year of operation, the use of its aircraft met the definition of a common carrier under the sales and use tax law. As a result, the SBE determined that CKE's aircraft was exempt from use tax.

Assuming that CKE's aircraft qualified for the common carrier exemption on the January 1, 2004, lien date—a factual issue we discuss below—the legal issue is whether sales tax should nevertheless have been included as an element of its market value. According to several opinions from the SBE, a sales tax should not have been included in the Assessor's valuation. For example, in September 2001, the SBE sent an opinion letter to the Santa Clara County Assessor regarding "Sales Tax as a Component of Value When Valuing an Aircraft," in which the SBE concluded, "if sales tax is typically included in the taxable value of the aircraft, it should be included in the value, whereas if aircraft are not subject to sales tax (common carriers), sales tax is not an element of their value."

Similarly, the two excerpts from the Assessors' Handbook, both prepared by the SBE and introduced in evidence[13] by CKE, provide that "there are exceptions to the general rule [that sales tax is an element of value]. Equipment rented to federal instrumentalities and aircraft used by common carriers (neither of which are subject to sales tax), for example, are valued without sales tax as an element of value. The reason in both cases is that the consumer (the federal government or the air carrier) is never liable for sales tax on purchases of such equipment. Consequently, the reproduction or

as lessees who are not residents of this state and who will not use such aircraft in this state otherwise than in the removal of such aircraft from this state."

[13] Each of the excerpts are from manuals contained in the SBE Assessors' Handbook, section 504 (Oct. 2002) Assessment of Personal Property and Fixtures, page 56 and section 577 (Nov. 2003) Assessment of General Aircraft, page 15. (See fn. 5, *ante*.)

replacement cost of such property should not include sales tax, unless or until, the property is put to private use or rented to a private party." (SBE Assessors' Handbook, § 504, *supra*, at p. 56; see *id.*, § 577, *supra*, at p. 15.) Moreover, the opinion letter that CKE obtained from the SBE after receiving notice of the escape assessment was consistent with these opinions: "[W]e conclude that [CKE's] aircraft [was] exempt from sales and use tax when [it was] purchased and when [it was] valued [by the Assessor] so long as [CKE] is a common carrier as defined by California Code of Regulations Title 18, section 1593."

In addition, Ms. Ruwart, a senior tax counsel with the SBE's legal department, stated that as long as an aircraft was operated by a common carrier, a sales tax should not be an element of value. She reasoned that common carriers had their own trade level because of the sales tax exemption.

The Appeals Board agreed with and adopted the SBE's conclusions concerning the effect of the common carrier exemption on the valuation of an aircraft for property tax purposes. According to the Board, as long as the use of CKE's aircraft met the definition of a common carrier, sales tax should not be an element of valuation for purposes of property tax assessment.

■ We agree with the trial court, which in turn agreed with the Appeals Board. They properly relied upon the SBE's opinion letters and the Assessor's Handbook excerpts, as well as the views of Ms. Ruwart. (See *Watson Cogeneration Co. v. County of Los Angeles* (2002) 98 Cal.App.4th 1066, 1070, fn. 2 [120 Cal.Rptr.2d 421] ["Assessors' handbooks have been relied upon by the courts and been accorded great weight in the interpretation of valuation questions. (*CAT Partnership v. County of Santa Cruz* (1998) 63 Cal.App.4th 1071, 1085, fn. 12 [74 Cal.Rptr.2d 652]; *Prudential Ins. Co. v. City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1155 [236 Cal.Rptr. 869].)"].)

■ The SBE concluded in 2001 that the operation of CKE's aircraft qualified it for the common carrier sales or use tax exemption, and such agency opinions, although not binding or dispositive, are entitled to deference under the circumstances of this case. As the Supreme Court explained, "We addressed the issue of judicial deference to administrative agency statutory interpretation in *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*). In *Yamaha*, the Court of Appeal had determined a State Board of Equalization publication represented the dispositive interpretation of Revenue and Taxation Code section 6008 et seq. (*Yamaha, supra*, at pp. 5–6.) In reversing and remanding, we acknowledged that while 'agency interpretation of the meaning and legal

effect of a statute is entitled to consideration and respect by the courts' (*id.* at p. 7), 'agency interpretations are not binding or . . . authoritative' (*id.* at p. 8). 'Courts must, in short, independently judge the text of [a] statute . . . .' (*Id.* at p. 7.) We determined that the weight accorded to an agency's interpretation is 'fundamentally situational' (*id.* at p. 12, italics omitted) and 'turns on a legally informed, commonsense assessment of [its] contextual merit' (*id.* at p. 14). *Yamaha* set down a basic framework of factors as guidance and concluded that the degree of deference accorded should be dependent in large part upon whether the agency has a ' "comparative interpretative advantage over the courts" ' and on whether it has arrived at the correct interpretation. (*Id.* at p. 12.)" (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1264–1265 [8 Cal.Rptr.3d 532, 82 P.3d 740].)

■ The Appeals Board's interpretation is also entitled to considerable deference. (See *Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 648 [43 Cal.Rptr.3d 434] [" 'The board's interpretation of an ordinance's implementation guidelines is given considerable deference and must be upheld absent evidence the interpretation lacks a reasonable foundation. [Citation.] The burden is on the appellant to prove the board's decision is neither reasonable nor lawful.' [Citation.]"].) Based on the administrative record, the Appeals Board's interpretation does not lack a "reasonable foundation." To the contrary, in light of the SBE's consistent conclusions concerning the application of the common carrier exemption to the aircraft valuation issue, the Appeals Board's adoption of that interpretation was reasonable. The definition of a common carrier in California Code of Regulations, title 18, section 1593, subdivision (a)(2) is broad enough to include unscheduled air taxi operations as well as large commercial airlines. The definition expressly includes "any person who engages in the business of transporting persons . . . for hire." (*Ibid.*)

Relying primarily on the decision in *Xerox, supra,* 66 Cal.App.3d 746, the Assessor contends that "California business personal property is routinely assessed at a valuation level that includes a provision for sales tax." The assessor maintains that the decision in *Xerox* supports his conclusion that the "trade level" for CKE's aircraft is that of general aviation aircraft, which, according to the Assessor, are always assessed using sales tax as an element of value.

In *Xerox, supra,* 66 Cal.App.3d 746, the "personal property in question consisted of office copying machines and related equipment manufactured by [Xerox], and leased by it on the lien date to various users . . . ." (*Id.* at p. 750.) Under the lease agreements, the property remained under Xerox's ownership. (*Ibid.*) Although the property had a list price, the history of the industry showed that very few copiers were actually sold to end-users. (*Id.* at

p. 751.) Nevertheless, various county assessors valued the property using sales tax and freight as an element of value. (*Ibid.*) Xerox filed actions in the trial court alleging that the assessors erroneously included sales tax and freight as an element of value. (*Id.* at p. 750.) The trial court entered judgment in favor of the assessors. (*Ibid.*)

In affirming the judgment of the trial court, the court in *Xerox, supra,* 66 Cal.App.3d 746, rejected Xerox's argument that sales tax should not have been included as an element of value because the copiers in issue had been leased, not sold, to the end users. As the court in *Xerox* observed, "[t]he real basis for [Xerox's] argument against the inclusion of the sales tax as a part of cost in the cost approach appears to be that the consideration of a consumer's cost assumes a sale, whereas the equipment being appraised is leased. As we have previously observed, the form of the transaction is irrelevant where value is being determined *at the consumer trade level.* The fair market value of the property is the same whether the ultimate consumer owns it or leases it. [Citation.]" (*Id.* at p. 760, italics added.)

Contrary to the Assessor's assertion, *Xerox, supra,* 66 Cal.App.3d 746, does not support his conclusion concerning sales tax as an element of value in the instant case. In *Xerox,* there was no dispute regarding the proper trade level at which to assess the property. The court analyzed the issue on the assumption that the property was in the hands of the ultimate consumer, regardless of whether it was leased or purchased. Here, the Assessor argues that the proper trade level at which to assess CKE's aircraft is that of general aviation aircraft, i.e., privately owned aircraft that are primarily used by their owners. In contrast, CKE contends that because its aircraft was operated by a common carrier, the proper trade level at which to value it is that of common carrier aircraft, i.e., it should be valued at the price at which a common carrier like Elite could acquire it in the market on the lien date. Because a common carrier similarly situated to Elite on the lien date could have acquired the aircraft without incurring sales tax, CKE contends that sales tax should not have been included as an element of value.

We agree with CKE that the proper trade level is that of a common carrier in the market on the lien date. Therefore, the holding in *Xerox, supra,* 66 Cal.App.3d 746, is not dispositive of the trade level issue. In any event, the rationale underlying the court's decision in that case would suggest only that CKE's aircraft must be assessed at the appropriate trade level—whatever that may be—and regardless of whether it is leased or owned. Accordingly, if the evidence before the Board showed that CKE leased the aircraft to Elite on the lien date for use in its common carrier operations, the holding in *Xerox* would neither mandate nor imply that the aircraft should nevertheless be assessed as a general aviation aircraft.

That CKE may have bought the aircraft subject to a sales or use tax or could sell it to a private party who is not a common carrier is irrelevant if, on the lien date, the aircraft was operated by a common carrier. The common carrier aircraft's hypothetical purchase or sale price on the lien date would be determined by the price a common carrier at the same trade level as Elite would pay for the aircraft in the market—i.e., without considering a sales or use tax. Accordingly, we hold that so long as CKE was eligible for a common carrier exemption from sales or use tax on the January 1, 2004, lien date, a sales tax figure should not have been included as an element of value in the assessment of CKE's aircraft.

### D. *Proof As to Common Carrier*

The Assessor contends that even assuming the common carrier exemption can operate to exclude sales tax as an element of value in the assessment of a common carrier's aircraft, there is no evidence in the record showing that CKE's aircraft was being operated by a common carrier on the lien date. According to the Assessor, CKE's evidence of common carrier status was limited to the use tax exemption for which it applied in 2001 based on the first 12 months of operational use. From the Assessor's perspective, it was incumbent upon CKE, as the taxpayer seeking a change in assessment, to demonstrate affirmatively to the Appeals Board that its aircraft was operated by a qualifying common carrier in January 2004.

 The Assessor, not CKE, had the burden of rebutting the presumption of correctness in CKE's favor concerning CKE's valuation, which valuation was based upon the use of its aircraft by a common carrier. To rebut that presumption successfully, the Assessor was required to demonstrate affirmatively that CKE's aircraft did not qualify for a common carrier exemption on the lien date. As the Assessor admitted, however, he did not present any evidence on that issue at the hearing on CKE's appeal, nor did he even request that CKE produce documentation relevant to that issue at the hearing. The Assessor therefore failed to rebut the presumption that CKE's valuation was correct.

That the Assessor produced some evidence in support of the amount of the escape assessment is insufficient. Under Revenue and Taxation Code section 167, the Assessor had to prove, as a factual matter, that CKE's valuation was incorrect by showing that CKE's aircraft had been converted to private use—i.e., non-common-carrier status—by the time of the valuation. The Assessor's failure to do so justified the Appeal Board's determination in favor of CKE.

## DISPOSITION

The judgment of the trial court is affirmed. CKE is awarded its costs on appeal. We deny CKE's motion for sanctions. (See *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1261–1262 [82 Cal.Rptr.3d 440].)

Armstrong, Acting P. J., and Kriegler, J., concurred.