Filed 2/22/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B326944 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA094627) |
| v. | |
| JASMEN LAVAR HALL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard H. Kirschner, Judge. Affirmed.

Charles Thomas Anderson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Under Penal Code[1] section 1001.36, a trial court may place a criminal defendant who has been diagnosed with a mental disorder on mental health diversion, allowing the defendant to obtain treatment for his or her mental illness and potentially avoid prosecution. This case requires that we consider what kind of uncharged criminal conduct by a defendant while on diversion may justify reinstating charges on the ground that the defendant is no longer a suitable candidate for diversion. (See *id.*, subd. (g)(3).)

After the People charged defendant Jasmen Lavar Hall with carjacking and related offenses, the trial court placed Hall on mental health diversion. Soon thereafter, Hall was expelled from his residential treatment program for threatening and assaulting fellow patients and destroying property. Following this altercation, Hall absconded and remained missing for approximately six months. The trial court issued a bench warrant, terminated diversion after Hall was apprehended, and reinstated criminal proceedings. Hall was convicted after a jury trial of the carjacking-related offenses and sentenced to an aggregate sentence of seven years eight months in prison.

Hall contends the court erred in reinstating criminal proceedings because he did not meet the statutory criteria for having his diversion terminated. (§ 1001.36, subds. (g)(1)-(4).) The People did not charge Hall with any criminal offense related to his conduct while on diversion. Hall argues that uncharged "criminal conduct rendering [a] defendant [no longer] unsuitable for diversion" (§ 1001.36, subd. (g)(3)) should be limited to certain

_____

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

serious and violent felony offenses that "pose an unreasonable risk of danger to public safety . . . if treated in the community." (§ 1001.36, subd. (c)(4).)  As explained below, we reject this construction of the diversion statute.

## FACTS AND PROCEEDINGS BELOW

### A. The Carjackings

In the afternoon of April 13, 2021, Hall was seen yelling, making noise, and possibly either singing or speaking gibberish in a store parking structure.  He dragged a woman out of a nearby parked car and confronted her.  The woman eventually was able to return to her car and drove away.

Shortly afterward, another woman, Sharon B., drove into the parking structure.  Sharon parked her SUV but left the motor running as she walked around to the rear passenger side door to help her mother-in-law get out of the vehicle.  As she was doing so, Hall approached the vehicle, got into the driver's seat, and shut the door.  When Sharon returned to the driver's side and saw Hall, she grabbed the steering wheel, but Hall drove away, causing Sharon to let go of the wheel.

Law enforcement officers had been called to the scene following the first incident and were already positioned in a police car near the exit of the parking structure when Hall drove away.  The officers pursued Hall as he drove at a high rate of speed, ran through several red lights and stop signs, and drove on the wrong side of the road.  Officers eventually apprehended Hall after he abandoned Sharon's SUV and fled on foot.

### B. Mental Health Diversion Proceedings

An information filed June 25, 2021, charged Hall with one count of carjacking (§ 215, subd. (a)), one count of attempted

3

carjacking (§§ 215, subd. (a), 664), and one count of evading a police officer while driving recklessly (Veh. Code, § 2800.2). It also alleged Hall had a prior conviction for a strike offense (see §§ 667, subds. (b)-(i), 1170.12).

At the request of defense counsel, a psychiatrist, Dr. Jack Rothberg, examined Hall for potential mental health diversion prior to trial. Rothberg filed a report diagnosing Hall with "chronic paranoid schizophrenia and polysubstance abuse," which in Rothberg's view "substantially contributed to his behavior" in committing the offenses. Rothberg believed that Hall needed treatment "in a locked facility or a very highly structured one which he cannot leave at will," and that if he remained on his medication, abstained from illegal drugs, and completed a mental health program, "his symptoms will be ameliorated and he will be able to exercise appropriate judgment and maintain impulse control." Perry Zimmerman, a certified addiction specialist for Recovery Network Resource, wrote a letter to the court conditionally accepting Hall to a residential recovery home known as First to Serve. Zimmerman described First to Serve as a "highly structured treatment" program and "as close to a 'lockdown' facility as possible" (bold omitted), where Hall would not be allowed to leave except for official appointments and only with an escort from the program.

At a hearing on September 14, 2021, the trial court placed Hall on mental health diversion for up to two years. The court, relying on Rothberg's report, found that Hall's mental disorders were a significant factor in the commission of his crimes, that he would not pose an unreasonable risk to public safety if treated in a highly structured program, and that he was likely to respond to mental health treatment.

4

Hall was transported from jail to First to Serve on September 20, 2021. He was discharged from the program 12 days later "due to violent and destructive behavior that he presented while under the influence of alcohol and/or a controlled substance." The program sent a letter to the court describing the conduct that led to Hall's dismissal:

Hall "was found sitting in the restroom with the lights off throwing up in the waste basket. A fellow client addressed him and asked him to clean himself and the restroom up and regain his composure. He then became confrontational with the fellow client and tried pushing him and grabbed him by the neck. The client was clearly larger than him and defended himself and took control of the situation. At that point . . . Hall directed his aggravation towards his roommate [who] happened to be Caucasian shifting the confrontation into a racial matter and he, also, defended himself and took control of his situation as well. . . . Hall repeatedly asked his roommate to follow him into the back patio for a second assault but was declined. He chased and followed him throughout the house making racial remarks and destroying program property. His roommate backed into the restroom and closed the door to separate himself from . . . Hall who proceeded to break the door down with his fist. . . . Hall then went into the kitchen looking for something and saw and broke a [two]-gallon size pickle jar and picked up the bigger piece of glass to use it as a weapon. He was stopped by fellow clients that had been trying to assess the situation. . . . Hall continued to be confrontational with staff. It was difficult for the staff to get control of . . . Hall because he was incoherent. Five staff members were not able to get him under control. He punched a 50-inch smart T.V. [H]e punched a hole in the bedroom door,

broke a secondary restroom door, made a mess of the kitchen, and put the clients and staff in potential physical harm." Hall attempted to flee when police officers arrived; they apprehended him but then allowed him to walk away.

On October 5, 2021, after receiving the letter from First to Serve, the trial court issued a bench warrant for Hall. The minute order from the October 5 hearing states that "diversion is not terminated at this time." At a hearing on March 29, 2022, after Hall was taken into custody, the court recalled and quashed the bench warrant. During the hearing, Hall's attorney stated that she thought "because [Hall] has a charge, [his] mental health diversion is being terminated," but there is no indication in the appellate record that Hall was in fact charged with any offenses related to his conduct while on diversion. Although the minute order for the hearing states "diversion terminated," the record does not indicate the court gave the parties notice of a hearing on reinstatement of criminal proceedings or that the parties had the opportunity to argue the issue.

Instead, at the next hearing, on April 26, 2022, the trial court asked the prosecutor about the status of the case, and the prosecutor replied, "I think we're set for mental health diversion determination as to whether he'll stay on today." The court responded, "That's been terminated." Hall's attorney replied that her client "is . . . respectfully requesting that the court reinstate him on mental health diversion." Hall's attorney stated that Hall wanted to be placed in a different program, and that she had spoken with a contact at a recovery organization who believed he could place Hall in a program.

The trial court denied the request, citing Hall's "long history of violence . . . . The court wanted to see if it was possible

6

to address his addiction problems. It's clear to the court the time he was in the program he was using drugs, probably meth," and that led him to "engage[ ] in a violent confrontation with another resident of the program that escalated into further violence and destruction of the program's property as well."

## DISCUSSION

### A.    Legal Background on Mental Health Diversion

Mental health diversion is designed "to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services. (§ 1001.35.) Diversion can be 'viewed as a specialized form of probation, . . . [that] is intended to offer a second chance to offenders who are minimally involved in crime and maximally motivated to reform . . . .' [Citation.]" (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 886.)

Section 1001.36 gives the trial court authority to grant pretrial diversion to criminal defendants who "ha[ve] been diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders" (*id.*, subd. (b)(1)),[2] so long as the "mental disorder was

---

[2] Section 1001.36 has been amended since Hall's diversion proceedings in 2021. (See Senate Bill No. 1223 (2021-2022 Reg. Sess.); Stats. 2022, ch. 735.) We assume without deciding that these amendments apply retroactively to Hall's case. In most respects, the statute remains substantively unchanged, though the statute's provisions have been rearranged and renumbered. For the sake of consistency, we cite the current version of the

7

a significant factor in the commission of the charged offense" (*id.*, subd. (b)(2)).  To be eligible, the defendant must not be charged with certain very serious offenses, such as murder, voluntary manslaughter, or an offense requiring a defendant to register as a sex offender.  (*Id.*, subd. (d).)  Before the court grants diversion, it must consider four criteria for determining whether "the defendant is suitable for pretrial diversion."  (*Id.*, subd. (c).)  First, a qualified mental health expert must opine that the defendant's symptoms would respond to treatment (*id.*, subd. (c)(1)).  In addition, the defendant must consent to diversion and waive his right to a speedy trial (*id.*, subd. (c)(2)), and must "agree[ ] to comply with treatment" (*id.*, subd. (c)(3)).  Finally, the trial court must find that "[t]he defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community" (*id.*, subd. (c)(4); see also *People v. Frahs* (2020) 9 Cal.5th 618, 626-627 [summarizing requirements for diversion].)

If, at the conclusion of the diversion period, which may last for a maximum of two years (§ 1001.36, subd. (f)(1)(C)(i)), the defendant "has performed satisfactorily in diversion, . . . the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion."  (*Id.*, subd. (h).)

---

statute throughout this opinion, noting where the prior version differed.  In this instance, the former version of the statute differs from the current version in that it provided for pretrial diversion for defendants who "suffer[ ] from a mental disorder" (Former § 1001.36, subd. (b)(1)(A)), as opposed to having "been diagnosed with a mental disorder."  (§ 1001.36, subd. (b)(1).)  The change does not affect the outcome of this case.

On the other hand, if one of several circumstances applies, "the court shall, after notice to the defendant, defense counsel, and the prosecution, hold a hearing to determine whether the criminal proceedings should be reinstated, whether the treatment should be modified, or whether the defendant should be conserved and referred to the conservatorship investigator . . . to initiate conservatorship proceedings." (§ 1001.36, subd. (g).) These circumstances are as follows:

"(1) The defendant is charged with an additional misdemeanor allegedly committed during the pretrial diversion and that reflects the defendant's propensity for violence.

"(2) The defendant is charged with an additional felony allegedly committed during the pretrial diversion.

"(3) The defendant is engaged in criminal conduct rendering the defendant unsuitable for diversion.

"(4) Based on the opinion of a qualified mental health expert whom the court may deem appropriate, either of the following circumstances exists:

"(A) The defendant is performing unsatisfactorily in the assigned program.

"(B) The defendant is gravely disabled . . . ." (§ 1001.36, subd. (g)(1)-(4).)

## B. The Trial Court Did Not Err in Terminating Mental Health Diversion

Hall argues the trial court erred by reinstating criminal charges because none of the five statutory criteria for initiating a hearing to terminate diversion outlined in section 1001.36,

subdivision (g)(1) through (g)(4) applied.[3]  We agree as to four of these criteria.  The appellate record does not indicate Hall's conduct at First to Serve led to any new felony charges, nor to any filed misdemeanor charges reflecting a propensity for violence (see § 1001.36, subd. (g)(1)-(2)), and there is no indication that he is "gravely disabled" (*id.*, subd. (g)(4)(B)). Under the fourth criterion, a court may terminate diversion and reinstate charges if "[b]ased on the opinion of a qualified mental health expert" (*id.*, subd. (g)(4)) "[t]he defendant is performing unsatisfactorily in the assigned program" (*id.*, subd. (g)(4)(A)). Hall's performance at First to Serve was decidedly unsatisfactory, but the discharge letter from the program, which was unsigned, did not represent the opinion of a "qualified mental health expert."  (*Id.*, subd. (f)(2).)[4]

_____

[3] The Attorney General contends Hall forfeited any challenge to the trial court's procedure in terminating diversion or the material the court considered by failing to object before the trial court.  We disagree because under the circumstances, it is not clear when Hall could have made a proper objection.  At the March 29, 2022 hearing when the court re-arraigned Hall, defense counsel made a comment about the likely termination of diversion but the court did not state on the record that it was revoking Hall's diversion status.  At the next hearing the following month, when the prosecutor indicated his understanding that the matter was set for a hearing that day on whether Hall would stay on diversion, the court stated it had already revoked Hall's diversion.  At that point, Hall's attorney attempted to convince the court to reinstate diversion.

[4] After Hall's diversion was terminated, the Legislature amended section 1001.36 to define "[q]ualified mental health expert" as "includ[ing], but . . . not limited to, a psychiatrist,

10

That leaves one last potential basis for terminating Hall's diversion: that while on diversion, he "engaged in criminal conduct rendering [him] unsuitable for diversion." (§ 1001.36, subd. (g)(3).) Hall does not deny he committed the conduct described in the First to Serve letter, which included attacks on other program participants and several instances of destruction of property, or his absconding resulting in the issuance of a bench warrant. Instead, he argues that his actions do not fall within the definition of "criminal conduct" in section 1001.36, subdivision (g)(3).[5]

---

psychologist, a person described in Section 5751.2 of the Welfare and Institutions Code[, that is, a person subject to mental health licensing requirements], or a person whose knowledge, skill, experience, training, or education qualifies them as an expert." (§ 1001.36, subd. (f)(2.) As we find the termination of Hall's diversion appropriate under another provision of section 1001.36, we need not address whether the failure of First to Serve's discharge letter to include the opinion of a qualified mental health expert under section 1001.36, subdivision (c)(4) was prejudicial.

[5] Hall contends that the Attorney General conceded Hall's argument on this subdivision by arguing only that his criminal conduct justified holding a hearing on terminating diversion, rather than arguing that his conduct justified actually terminating diversion. We disagree. Although section 1001.36, subdivision (g) states that the circumstances listed in subdivision (g)(1) through (g)(4) require the trial court to "hold a hearing to determine whether the criminal proceedings should be reinstated, whether the treatment should be modified, or whether the defendant should be conserved," it is implicit in the statute that the same circumstances that trigger the hearing also justify the trial court in exercising its discretion to reinstate criminal

Hall argues that to interpret "criminal conduct" in section 1001.36, subdivision (g)(3) we must look to subdivision (c),[6] which lists four criteria for determining whether a defendant is "suitable for pretrial diversion." Only one of these criteria refers to the defendant's propensity for committing crimes: "The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).) Section 1170.18 defines " 'unreasonable risk of danger to public safety' [as] an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) Section 667, subdivision (e)(2)(C)(iv) in turn lists so-called "super-strike" offenses, including homicide and sexually violent offenses, and "[a]ny serious or violent felony offense punishable in California by life imprisonment or death" (*id.*, subd. (e)(2)(C)(iv)(VIII)). Because the conduct that led to Hall's expulsion from First to Serve did not rise to this level, Hall argues it was not "criminal conduct rendering [him] unsuitable for diversion" under section 1001.36, subdivision (g)(3).

We do not agree that "criminal conduct rendering the defendant unsuitable for diversion" is limited to the offenses listed in section 667, subdivision (e)(2)(C)(iv). We give a statute's

---

proceedings, modify the defendant's treatment, or initiate a conservatorship.

[6] This portion of section 1001.36 has been substantively amended since the proceedings in Hall's case. The former version of section 1001.36 did not state which factors rendered a defendant unsuitable for diversion. (See former § 1001.36, subd. (b).)

words their ordinary and usual meaning.  (*Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490.)  As indicated by section 1001.36, subdivision (g)(3)'s plain language, "criminal conduct rendering the defendant unsuitable for diversion" refers to whether such conduct renders the defendant no longer suitable for diversion, and not solely to whether the defendant's criminal conduct while on diversion "pose[s] an unreasonable risk of danger to public safety" as defined by section 1001.36, subdivision (c)(4).

As previously stated, suitability for diversion requires a defendant meet all the criteria in section 1001.36, subdivision (c).  A defendant must not only "pose [no] unreasonable risk of danger to public safety" (§ 1001.36, subd. (c)(4)) but must also "consent[ ] to diversion" (*id*., subd. (c)(2)), and "agree[ ] to comply with treatment as a condition of diversion" (*id*., subd. (c)(3)).  These criteria are consistent with the principle that diversion is designed to provide an alternative to criminal charges for those " 'maximally motivated to reform . . . .' [Citation.]" (*People v. Qualkinbush*, *supra*, 79 Cal.App.5th at p. 886.)

Hall's criminal conduct included assaulting two fellow program participants and destroying the program's property.  He then absconded, requiring the issuance of a bench warrant, and made no apparent effort to seek any further treatment in the six months until he was re-arrested.  In addition to being criminal, this conduct demonstrated that Hall no longer agreed to comply with his treatment obligations and had stopped consenting to diversion.  It thus fell within the meaning of section 1001.36, subdivision (g)(3) and supported the trial court's decision that Hall's criminal conduct rendered him no longer suitable for diversion.  In reaching this conclusion, we need not and do not

13

decide the full scope of section 1001.36, subdivision (g)(3). We hold only that criminal conduct under section 1001.36, subdivision (g)(3) need not include a super-strike offense or the risk of such an offense, and that on the record before us the trial court did not err in terminating diversion based on Hall's criminal conduct while on diversion.

## C. The Trial Court's Error in Failing to Provide Notice of a Hearing to Terminate Diversion Was Harmless

Hall does not challenge the procedures the trial court followed before terminating diversion, but for the sake of completeness we note the trial court erred by terminating Hall's mental health diversion without following the procedures set forth in section 1001.36, subdivision (g). The court did not provide "notice to the defendant, defense counsel, and the prosecution" (*ibid.*) before the March 29, 2022 hearing, nor did it give Hall an opportunity to challenge the evidence against him or argue for remaining on diversion before the court reinstated criminal proceedings in the case. (*Ibid.*)

This is not sufficient to warrant remanding the case to the trial court for a new hearing, however. A defendant seeking relief from a trial court's decision on mental health diversion must show the error prejudiced him. (See *People v. Bunas* (2022) 79 Cal.App.5th 840, 866.) Because pretrial diversion is a creation of state law and does not implicate Hall's federal constitutional rights, we review for prejudice under the *Watson* standard, under which the appealing party must show "that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836; accord, *People v. Banner* (2022) 77 Cal.App.5th 226, 235.)

14

Hall cannot meet this standard.  Although the trial court did not give Hall an opportunity to argue his case at the March 29, 2022 hearing, it allowed him to do so one month later when his attorney requested that the court reconsider its decision to terminate diversion.  The court evaluated that argument on the merits; it found termination of diversion appropriate on the facts before it and not based on any rule particular to a motion for reconsideration.  At no point, either before the trial court or on appeal, has Hall denied the accuracy of the First to Serve report of the events that led to his dismissal from that program.  That conduct was a sufficient basis for the court's determination on April 26, 2022, that Hall was no longer suitable for diversion.

## DISPOSITION

The judgment of conviction is affirmed.

CERTIFIED FOR PUBLICATION

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

15